Shiloh S. Hernandez
Laura H. King
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org
king@westernlaw.org

*Attorneys for Plaintiffs*

Samantha Ruscavage-Barz (NM Bar #23276)
WildEarth Guardians
516 Alto St.
Santa Fe, NM 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org
*pro hac vice application pending*

*Attorney for Plaintiff WildEarth Guardians*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS and MONTANA ENVIRONMENTAL INFORMATION CENTER,<br><br>       Plaintiffs,<br><br>   vs.<br><br>RYAN ZINKE, in his official capacity of Secretary of the Interior; U.S. OFFICE OF SURFACE MINING | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

RECLAMATION AND
ENFORCEMENT, an agency within the
U.S. Department of the Interior; U.S.
DEPARTMENT OF THE INTERIOR, a
federal agency, MARCELLO CALLE,
in his official capacity as Program
Support Division Manager of U.S.
Office of Surface Mining Western
Region; DAVID BERRY, in his official
capacity as Regional Director of U.S.
Office of Surface Mining Western
Region; GLENDA OWENS, in her
official capacity as Acting Director of
U.S. Office of Surface Mining;
KATHARINE MacGREGOR, in her
official capacity as Assistant Secretary
of Land and Minerals Management of
the U.S. Department of the Interior,

       Defendants.

## INTRODUCTION

1.    Plaintiffs WildEarth Guardians and Montana Environmental

Information Center (collectively, "Citizens") bring this civil action for declaratory

and injunctive relief against Secretary of the Interior Ryan Zinke, the U.S. Office

of Surface Mining Reclamation and Enforcement, the U.S. Department of the

Interior, Robert Postle, David Berry, Glenda Owens, and Janice Schneider

(collectively, "Federal Defendants") in accordance with the Administrative

Procedure Act (APA), 5 U.S.C. §§ 701-706, and the National Environmental

Policy Act (NEPA), 42 U.S.C. §§ 4321-4370h.

2

2.     The Citizens' action arises out of the Federal Defendants' violation of NEPA by failing to tell the public the whole environmental truth about numerous harmful impacts of coal mining prior to approving the mining plan modification for Federal Coal Lease MTM 94378 ("Spring Creek Mine Expansion") for the Spring Creek Mine in southeastern Montana. Compounding the error, Federal Defendants also failed to consider evidence that the underlying coal lease may be void as a matter of law.

3.     The Spring Creek Mine, owned and operated by Spring Creek Coal Company, a wholly-owned subsidiary of Cloud Peak Energy, is the seventh largest coal strip-mine by production in the United States. The mine has been operating since 1979. No environmental impact statement (EIS) has ever been prepared for the mine. The mine expansion adds 1,117.7 acres to the mine, of which 503.7 acres, containing 84.8 million tons of coal, will be strip-mined at a rate of 18 million tons per year.

4.     All of the coal mined will be shipped by rail to power plants to be burned to generate electricity. The mine ships coal to power plants in the upper Mid-West, Arizona, and Washington State. Approximately one-quarter of the coal, over four-million tons, is exported via the Westshore Terminal in British Columbia, Canada. The expansion will result in approximately 2,300 coal trains traveling to and from the mine annually for nearly a decade.

5.     When burned, the coal will emit great clouds of harmful pollution, including tens of millions of tons of carbon dioxide ($CO_2$), which aggravates the impacts of climate change; thousands of tons of particulate matter, which causes sickness and premature deaths across the United States; tens of thousands of tons of sulfur dioxide, which causes acid-rain; tens of thousands of tons of nitrogen oxides, which create smog and harmful ozone pollution; and hundreds of pounds of mercury, a powerful neurotoxin that harms brain development of children and fetuses.

6.     Defendant U.S. Office of Surface Mining Reclamation and Enforcement prepared an environmental assessment for the mine expansion, concluded that the impacts of the mine expansion would be insignificant, and issued a finding of no significant impact (FONSI). Defendant Marcello Calle's predecessor, Robert Postle, signed the finding of no significant impact. The Assistant Secretary of Land and Minerals Management then approved the mine expansion. Thus, as the sprawling operation closes in on its fortieth year of strip mining, it has once again evaded the environmental scrutiny of an environmental impact statement.

7.     Accordingly, the Citizens are compelled to bring this action.

**JURISDICTION AND VENUE**

4

8.     This Court has federal-question jurisdiction over this action, 28 U.S.C. § 1331, which arises under NEPA, 42 U.S.C. §§ 4321-4370h, and the APA, 5 U.S.C. §§ 701-706.

9.     The requested declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. §§ 705, 706.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in Montana and a substantial part of the property that is the subject of the action, the Spring Creek Mine, is located in Montana. Venue is also proper under 28 U.S.C. § 1391(e)(1)(C) because officers of the United States are defendants and Plaintiff Montana Environmental Information Center resides in Montana.

11.     Divisional venue is proper in the Billings Division of this Court because the strip mine is located within the Billings Division.

12.     Citizens have standing under Article III of the U.S. Constitution because the challenged actions cause them economic, professional, recreational, and aesthetic harm, which will be remedied by a favorable ruling from this Court.

13.     The challenged actions are final and subject to judicial review under 5 U.S.C. §§ 702, 704, 706.

14.     Citizens have exhausted any and all available and required administrative remedies.

## PARTIES

15.     Plaintiff WildEarth Guardians (Guardians) is a nonprofit conservation organization with more than 200,000 members and activists throughout the United States, including nearly 900 in Montana. Guardians has a major office in Missoula, Montana. Guardians' mission is to protect and restore the wildlife, wild rivers, wild places, and health of the American West. Through its Climate and Energy Program, Guardians is dedicated to protecting the American West from the dangers it faces from the climate crisis. Guardians' members and staff have recreational, aesthetic, scientific, professional, and spiritual interests in a protected and stable climate, and an environment that is sustained by a protected and stable climate. Guardians' members use and plan to continue to live in, use, and enjoy landscapes impacted by the Spring Creek Mine Expansion. Guardians brings this action on its own behalf and on behalf of its adversely affected members.

16.     Plaintiff Montana Environmental Information Center (MEIC) is a nonprofit organization founded in 1973 with approximately 3,000 members throughout the United States and the State of Montana. MEIC is dedicated to the preservation and enhancement of the natural resources and natural environment of Montana and to the gathering and disseminating of information concerning the protection and preservation of the human environment through education of its members and the general public concerning their rights and obligations under

local, state, and federal environmental protection laws and regulations. MEIC is also dedicated to assuring that federal officials comply with and fully uphold the laws of the United States that are designed to protect the environment from pollution. MEIC and its members have intensive, long-standing recreational, aesthetic, scientific, professional, and spiritual interests in the responsible production and use of energy, the reduction of greenhouse gas (GHG) pollution as a means to ameliorate the climate crisis, and the land, air, water, and communities impacted by climate change. MEIC members live, work, and recreate in areas that will be adversely impacted by the Spring Creek Mine Expansion. MEIC brings this action on its own behalf and on behalf of its adversely affected members.

17.     Defendant Ryan Zinke is Secretary of the U.S. Department of the Interior. Secretary Zinke is responsible for implementing and complying with federal laws governing mining plan modifications, including NEPA, the Mineral Leasing Act (MLA), and the Surface Mining Control and Reclamation Act (SMCRA). Secretary Zinke is required to assure that any mining of leased federal coal is in the best environmental and economic interests of the American people prior to approving any federal mining plan modification.

18.     Defendant U.S. Department of the Interior is a federal department responsible for implementing and complying with federal laws governing approval of mining plan modifications, including NEPA, the MLA, and SMCRA.

7

19.     Defendant U.S. Office of Surface Mining Reclamation and Enforcement (OSM) is a federal agency within the U.S. Department of the Interior that is responsible for assuring lawful environmental review of mining plan modifications under NEPA and recommending approval, conditional approval, or disapproval of applications for mining plan modifications. OSM's Western Regional Office conducted the environmental review of the mining plan modification for the expansion of the Spring Creek Mine, concluding that the expansion would not significantly affect the environment.

20.     Defendant Marcello Calle is Program Support Division Manager of the U.S. Office of Surface Mining Western Region. Mr. Calle is responsible for managing federal coal resources, including those involved in this action. Mr. Calle is responsible for implementing and complying with NEPA and other federal laws governing review and approval of applications for mining plan modifications. Mr. Calle's predecessor approved OSM's finding of no significant impact for the Spring Creek Mine Expansion.

21.     Defendant David Berry is Regional Director of OSM's Western Region. Mr. Berry is responsible for managing federal coal resources, including those involved in this action, and for making recommendations to the Secretary of the Interior regarding applications for mining plan modifications. Mr. Berry is also responsible for implementing and complying with NEPA and other federal laws

governing review and recommendations for approval, conditional approval, or disapproval of applications for mining plan modifications.

22.   Defendant Glenda Owens is Director of OSM. Ms. Owens is responsible for assuring that OSM complies with federal laws, including NEPA and other laws governing review and recommendations for approval, conditional approval, or disapproval of applications for mining plan modifications.

23.   Defendant Katharine MacGregor is Assistant Secretary of Land and Minerals Management of the U.S. Department of the Interior. Ms. MacGregor is responsible for complying with federal laws governing approval, conditional approval, or disapproval of applications for mining plan modifications. Ms. MacGregor's predecessor approved the mining plan modification, allowing the Spring Creek Mine Expansion.

## FACTS

### I.   National Environmental Policy Act

24.   "NEPA is our basic national charter for the environment." 40 C.F.R. § 1500.1(a). NEPA's goal is to "prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of" all people. 42 U.S.C. § 4321. NEPA recognizes that "each person should enjoy a healthful environment" and ensures that the federal government uses all practical means to "assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing

surroundings." *Id.* § 4331(b). NEPA also recognizes that "each person has a responsibility to contribute to the preservation and enhancement of the environment." *Id.* § 4331(c).

25.    Ultimately, NEPA's point is "not better documents but better decisions." 40 C.F.R. § 1500.1(c). "NEPA's purpose is not to generate paperwork—even excellent paperwork—but to foster excellent action. The NEPA process is intended to help public officials make decisions that are based on understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." *Id.*

26.    NEPA requires agencies to act proactively by requiring them to "integrate the NEPA process with other planning at the earliest possible time to insure that planning and decisions reflect environmental values, to avoid delays later in the process, and to head off potential conflicts." *Id.* § 1501.2.

27.    To meet these goals, agencies must prepare a "detailed statement"— an environmental impact statement—for any major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

28.    The environmental impact statement must address "any adverse environmental effects which cannot be avoided should the proposal be implemented." 42 U.S.C. § 4332(2)(C)(ii). In so doing, the agency must evaluate

"the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity." *Id.* § 4332(2)(C)(iv).

29.     NEPA further requires agencies to "recognize the worldwide and long-range character of environmental problems and, where consistent with the foreign policy of the United States, lend appropriate support to initiatives, resolutions, and programs designed to maximize international cooperation in anticipating and preventing a decline in the quality of mankind's world environment." *Id.* § 4332(2)(F).

## II.     Mineral Leasing Act and Surface Mining Control and Reclamation Act

30.     The Secretary of the Interior is responsible for authorizing, where appropriate, the mining of federally owned coal through approval of a mining plan. The authority to issue a mining plan is set forth under the Mineral Leasing Act (MLA), which states that before any entity can take action on a leasehold that "might cause a significant disturbance of the environment," an operation and reclamation plan must be submitted to the Secretary of the Interior for approval. 30 U.S.C. § 207(c). Pursuant to the Surface Mining Control and Reclamation Act (SMCRA) and its implementing regulations, the Secretary "shall approve or disapprove the [mining] plan or require that it be modified." 30 U.S.C. § 1273(c); 30 C.F.R. § 746.14. It is standard practice for the Assistant Secretary for Land and Minerals Management to sign such mining plans on behalf of the Secretary.

31.     Although states have largely been delegated authority to regulate surface coal mining activities under SMCRA, the law prohibits the Secretary from delegating to states the duty to approve, disapprove, or modify mining plans for federally owned coal. *See* 30 U.S.C. § 1273(c); *see also* 30 C.F.R. § 745.13(i). SMCRA also prohibits the Secretary from delegating to states authority to comply with NEPA and other federal laws and regulations other than SMCRA with regard to the regulation of federally owned coal resources. 30 C.F.R. § 745.13(b).

32.     Among other things, a mining plan must, at a minimum, assure compliance with applicable requirements of federal laws, regulations, and executive orders, and be based on information prepared in compliance with NEPA. *See* 30 C.F.R. § 746.13. A legally compliant mining plan is a prerequisite to an entity's ability to mine leased federal coal. Regulations implementing SMCRA explicitly state that, "[n]o person shall conduct surface coal mining and reclamation operations on lands containing leased Federal coal until the Secretary has approved the mining plan." 30 C.F.R. § 746.11(a). To this end, a mining plan is "binding on any person conducting mining under the approved mining plan." *Id.* § 746.17(b).

33.     Although the Secretary of the Interior is charged with approving, disapproving, or modifying a mining plan, the Office of Surface Mining—an agency within the Department of the Interior—is charged with "prepar[ing] and

12

submit[ting] to the Secretary a decision document recommending approval, disapproval or conditional approval of the mining plan." *Id.* § 746.13. Thus, OSM plays a critical role in adequately informing the Secretary of the Interior.

34.    A "mining plan shall remain in effect until modified, cancelled or withdrawn." *Id.* § 746.17(b). The Secretary must modify a mining plan when, among other things, there is "[a]ny change in the mining plan which would affect the conditions of its approval pursuant to Federal law or regulation[,]" "[a]ny change which would extend coal mining and reclamation operations onto leased Federal coal lands for the first time[,]" or "[a]ny change which requires the preparation of an environmental impact statement under the National Environmental Policy Act[.]" *Id.* §§ 746.18(a), (d)(1), (d)(4)-(5).

## III.   Administrative Procedure Act

35.    The Administrative Procedure Act (APA) provides a right to judicial review for any "person suffering legal wrong because of agency action." 5 U.S.C. § 702. Actions that are reviewable under the APA include final agency actions "for which there is no adequate remedy in a court." *Id.*

36.    Under the APA, a reviewing court shall, *inter alia*, "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). Agency actions may also be set aside in other circumstances, such as where the action is "in excess of

statutory jurisdiction, authority, or limitations, or short of statutory right" or "without observance of procedure required by law." *Id.* § 706(2)(B)-(F).

## IV.   The Spring Creek Mine

37.   The Spring Creek Mine is a sprawling coal strip-mine located in southeastern Montana in a region known as the Powder River Basin. The mine pits and associated infrastructure lie adjacent to the Tongue River Reservoir. The strip mine began operating in 1979 through a lease of state coal. The strip-mine has grown incrementally through eight lease expansions involving a mixture of state, private, and federal coal, and now covers approximately 6,000 acres. The Spring Creek Mine is the seventh largest coal mine by production in the United States, stripping and shipping approximately 18 million tons of sub-bituminous coal each year.

38.   The U.S. Bureau of Land Management (BLM) leased the coal at issue to Cloud Peak in 2007. The lease covered 1,207 acres. BLM approved the lease pursuant to an environmental assessment and a finding of no significant impact. The environmental assessment for the lease explained that it did not authorize mining operations and that prior to any mining operations a detailed mining and reclamation plan would have to be submitted to and reviewed by state and federal agencies.

14

39.     The Interior Board of Land Appeals (IBLA) recently issued four rulings interpreting the scope of BLM's delegated authority to approve coal leases. *See WildEarth Guardians*, 187 IBLA 349 (May 6, 2016); Order in IBLA 2016-79 (Aug. 25, 2016); Order in IBLA 2016-80 (Aug. 25, 2016); *WildEarth Guardians et al.*, 189 IBLA 274 (Feb. 7, 2017). In these rulings, the IBLA set aside two coal leases and two coal lease modifications on the basis that the BLM employees who issued the approvals lacked the delegated authority to do so. The lease approvals at issue in these decisions were approved by either a BLM Field Manager or District Manager. The IBLA found that delegated authority to approve coal lease modification in Wyoming did not extend below the level of the Deputy State Director. 189 IBLA at 278. The IBLA found that delegated authority to approve coal lease modifications in Colorado did not extend below the level of the Deputy State Director and/or Solid Minerals Branch Chief. 187 IBLA at 351. As a result of this improper delegation, the IBLA held that where a leasing decision "is not issued by an employee with delegated authority, the decision has no legal effect." *See*, *e.g.*, 189 IBLA at 275. The lease underlying the Spring Creek Mine Expansion challenged here was approved by the Acting Miles City Field Office Manager. OSM has not addressed the validity of this coal lease in light of the recent IBLA opinions.

15

40.     Cloud Peak subsequently applied for and obtained a permit for the specific mining operation from the Montana Department of Environmental Quality (MDEQ). MDEQ prepared only a cursory checklist environmental assessment, pursuant to the Montana Environmental Policy Act. In 2012 OSM and the Secretary of the Interior then approved the mining plan modification, which authorized strip-mining 1,224 acres. The federal agencies approved the mining plan modification without conducting any further review under NEPA and without notifying the public of its decision to forego further NEPA review.

41.     Various citizens groups challenged the 2012 approvals, and the Federal District Court for the District of Montana held that the agencies' lack of environmental review violated NEPA. The court remanded the matter to the agencies to conduct a lawful NEPA review. The court, however, did not vacate the approval, allowing mining operations to continue uninterrupted.

42.     On remand, OSM prepared a draft environmental assessment in 2016 and accepted public comment. Because Cloud Peak Energy had continued mining during the remand, only approximately 503 acres and 84.8 million tons of coal remained undisturbed. The Citizens submitted detailed comments. In October 2016, Federal Defendants issued a final environmental assessment and finding of no significant impact, and approved the mine expansion.

16

43.     While OSM was reviewing the mine expansion at issue, it was

simultaneously considering another mining plan modification (the "TR1

Expansion") that would expand the Spring Creek Mine by another 498 acres and

48 million tons of coal. At the same time, BLM was also considering an

application by Cloud Peak Energy for another coal lease ("Spring Creek II Lease")

at the mine that would add 1,600 acres and 198 million more tons of coal to the

mine. Federal Defendants did not consider these proposed operations together with

the mine expansion at issue here.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Failure to Evaluate Indirect Effects of Coal Transportation)

44.     Citizens incorporate by reference all preceding paragraphs.

45.     NEPA requires federal agencies' environmental analysis to consider

"any adverse environmental effects which cannot be avoided." 42 U.S.C.

§ 4332(2)(C)(ii).

46.     Agencies are required to take a hard look at direct, indirect, and

cumulative impacts of a proposed action. 40 C.F.R. § 1508.25(c).

47.     Direct impacts are "caused by the action and occur at the same place

and time." *Id.* § 1508.8(a). Indirect impacts are "caused by the action and are later

in time or farther removed in distance but are still reasonably foreseeable." *Id.* § 1508.8(b).

48.     Cumulative impacts are "the impact[s] on the environment which result[] from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions, regardless of what agency (Federal or non-Federal) or person undertakes such actions." *Id.* § 1508.7.

49.     The Spring Creek mine expansion will cause foreseeable indirect and cumulative environmental impacts from coal transportation.

50.     Federal Defendants' failure to consider these impacts was arbitrary and capricious and unlawful, in violation of NEPA, 42 U.S.C. § 4332(2)(C), NEPA's implementing regulations, and the APA, 5 U.S.C. § 706.

## SECOND CAUSE OF ACTION
### (Failure to Adequately Evaluate Air Pollution from Combustion)

51.     Citizens incorporate by reference all preceding paragraphs.

52.     NEPA requires federal agencies' environmental analysis to consider "any adverse environmental effects which cannot be avoided." 42 U.S.C. § 4332(2)(C)(ii).

53.     Agencies are required to take a hard look at direct, indirect, and cumulative impacts of a proposed action. 40 C.F.R. § 1508.25(c).

18

54.    The Spring Creek mine expansion will cause foreseeable indirect and cumulative environmental impacts from coal combustion.

55.    Federal Defendants failure to consider these impacts was arbitrary and capricious and unlawful, in violation of NEPA, 42 U.S.C. § 4332(2)(C), NEPA's implementing regulations, and the APA, 5 U.S.C. § 706.

## THIRD CAUSE OF ACTION
**(Failure to Adequately Evaluate Greenhouse Gas Pollution from Combustion)**

56.    Citizens incorporate by reference all preceding paragraphs.

57.    NEPA requires federal agencies to take a hard look at "any adverse environmental effects which cannot be avoided." 42 U.S.C. § 4332(2)(C)(ii).

58.    Agencies must "recognize the worldwide and long-range character of environmental problems." *Id.* § 4332(2)(F).

59.    Agencies must also "insure that presently unquantified environmental amenities and values may be given appropriate consideration in decisionmaking along with economic and technical considerations." *Id.* § 4332(2)(B).

60.    Agencies may not trumpet the economic benefits of an agency action without also acknowledging the economic costs of the action.

61.    Federal Defendants failed to monetize the economic costs of greenhouse gas (GHG) emissions from the mining plan modification, despite their monetizing and trumpeting the economic benefits of the mining plan modification.

19

62.    Federal Defendants' failure to adequately consider the impacts of GHG emissions from the Spring Creek mine expansion was arbitrary and capricious and unlawful, in violation of NEPA, 42 U.S.C. § 4332(2)(B), (C), (F), NEPA's implementing regulations, and the APA, 5 U.S.C. § 706.

## FOURTH CAUSE OF ACTION
### (Failure to Consider Cumulative Actions)

63.    Citizens incorporate by reference all preceding paragraphs.

64.    Agencies must prepare a single EIS for actions that may have "cumulatively significant impacts." 40 C.F.R. § 1508.25(a)(2).

65.    The Spring Creek Mine Expansion, the TR1 expansion, and the Spring Creek II Lease may together have cumulatively significant impacts.

66.    Federal Defendants' failure to adequately consider the impacts of the Spring Creek Mine Expansion together with the TR1 expansion and the Spring Creek II Lease was arbitrary and capricious and unlawful, in violation of NEPA, 42 U.S.C. § 4332(2)(C), NEPA's implementing regulations, and the APA, 5 U.S.C. § 706.

## FIFTH CAUSE OF ACTION
### (Failure to Prepare an EIS)

67.    Citizens incorporate by reference all preceding paragraphs.

20

68.     Federal agencies are required to prepare an environmental impact statement (EIS) for any federal action that "significantly affect[s] the quality of the human environment." 42 U.S.C. § 4332(2)(C).

69.     To determine whether to prepare an EIS, an agency must "determine under its procedures supplementing [NEPA] regulations (described in § 1507.3) whether the proposal is one which . . . [n]ormally requires an environmental impact statement." *Id.* § 1501.4(a).

70.     NEPA procedures adopted by OSM are located in chapter 13 of Part 516 of the U.S. Department of the Interior's Departmental Manual (DM). In assessing whether to prepare an EIS for the mine expansion, Federal Defendants failed to consider their own NEPA procedures in 516 DM chapter 13.

71.     To determine the significance of an action, the agency must also evaluate the action's context and intensity. 40 C.F.R. § 1508.27(a), (b).

72.     Context means that the significance of the action must be considered in an appropriate setting. "For instance, in the case of a site-specific action, significance would usually depend upon the effects in the locale rather than in the world as a whole." *Id.* § 1508(27)(a). "Both short- and long-term effects are relevant." *Id.*

73.     Intensity requires the agency to consider ten factors, including adverse impacts, effects on public health and safety, unique characteristics of the impacted

21

area, controversy, uncertainty, precedential value, cumulative impacts, and potential for violations of environmental laws. *Id.* § 1508.27(b).

74.     Under these criteria the Spring Creek Mine Expansion raises substantial questions about whether the mine expansion will have significant effects due, among other things, to the mine size, coal transportation impacts, and coal combustion impacts, requiring preparation of an EIS.

75.     Federal Defendants' determination that the mining plan modification would not have significant environmental impacts was arbitrary and capricious and unlawful in violation of NEPA, 42 U.S.C. § 4332(2)(C), NEPA's implementing regulations, and the APA 5 U.S.C. § 706.

## SIXTH CAUSE OF ACTION
### (Violation of the APA)

76.     Citizens incorporate by reference all preceding paragraphs.

77.     The APA requires the Court to hold unlawful and set aside action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

78.     Part of OSM's role in the mining plan decisionmaking process is to prepare and submit to the Secretary a recommendation that the Secretary approve, disapprove, or conditionally deny the mining plan. 30 C.F.R. § 746.13.

79.     OSM's recommendation is based on consideration of a number of factors found at 30 C.F.R. § 746.13, and must include documentation "assuring

compliance with the applicable requirements of other Federal laws, regulations and executive orders other than the Act [SMCRA]." 30 C.F.R. § 746.13(c).

80.     Citing to *WildEarth Guardians*, 187 IBLA 353 (May 6, 2016), for the principle that BLM coal lease approvals made by Field Managers are invalid, Citizens put OSM on notice on July 19, 2016, and August 2, 2016, that the federal lease underlying the challenged mining plan modification was invalid because it was authorized by a BLM Field Manager who lacked the delegated authority to make such an authorization.

81.     Upon receiving notice that the coal lease was likely invalid, OSM had a duty to take a meaningful look at the relevant issue of lease validity, consider its implications, and include this information in its recommendation to the Secretary. OSM did not inform the Secretary in its recommendation for mining plan approval that the underlying federal coal lease could be invalid. OSM's arbitrary withholding of this information from the Secretary resulted in the Secretary's *ultra vires* approval of the mining plan modification.

## SEVENTH CAUSE OF ACTION
### (Ultra Vires Action by the Secretary of the Interior and the Assistant Secretary of Land and Minerals Management)

82.     Citizens incorporate by reference all preceding paragraphs.

23

83.     The APA requires the Court to hold unlawful and set aside action that is "in excess of statutory jurisdiction , authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

84.     Approval of the mining plan modification challenged herein constitutes final agency action under the APA.

85.     The Secretary and Assistant Secretary are authorized to approve mining plan modifications for leased federal coal. 30 U.S.C. §207(c); 30 C.F.R. § 746.11(a).

86.     Federal Coal Lease MTM 94378 underlies the mining plan modification challenged herein. This lease was approved by the Acting Miles City Field Office Manager for the BLM. Under BLM delegations of authority, Field Managers are not authorized to approve coal leases. *WildEarth Guardians et al.*, 189 IBLA at 278; *WildEarth Guardians*, 187 IBLA at 351. Therefore, MTM 94378 has no legal effect and is void as a matter of law. 189 IBLA at 275.

87.     Because MTM 94378 is not a valid federal coal lease, the Secretary and Assistant Secretary lacked the authority to approve the mining plan modification for the Spring Creek Mine Expansion. Accordingly, the Secretary and Assistant Secretary acted beyond the scope of their authority under the MLA when making the decision challenged herein.

## PRAYER FOR RELIEF

WHEREFORE, Citizens respectfully request that this Court:

A.      Declare that Federal Defendants acted in an ultra vires manner by approving the mining plan modification;

B.      Declare that Federal Defendants' actions violate NEPA and the regulations and policies promulgated thereunder;

C.      Vacate and set aside Federal Defendants' action;

D.      Enjoin Federal Defendants from re-issuing or approving the Spring Creek Mine Expansion until Federal Defendants have demonstrated compliance with NEPA and the APA;

E.      Enjoin operations in the Spring Creek Mine Expansion area until Federal Defendants have demonstrated compliance with NEPA and the APA;

F.      Award Citizens their fees, costs, and other expenses as provided by applicable law;

G.      Issue such relief as Citizens subsequently request or that this Court may deem just, proper, and equitable.

Respectfully submitted this 8th day of May 2017,

<div style="margin-left:40%">

/s/ Shiloh S. Hernandez
Shiloh S. Hernandez
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org

</div>