Kristine M. Akland
Akland Law Firm PLLC
PO Box 7274
Missoula, MT 59807
(406) 544-9863
aklandlawfirm@gmail.com

Mark Templeton, Director, *pro hac vice* pending
Robert Weinstock, Fellow and Lecturer at Law, *pro hac vice* pending
Abrams Environmental Law Clinic
6020 South University Avenue
Chicago, Illinois 60637
(773) 702-9611
templeton@uchicago.edu
rweinstock@uchicago.edu

*Attorneys for Proposed Amicus Curiae Professor Michael Greenstone*



**FILED**

MAR 3 0 2018

Clerk, U.S. District Court
District Of Montana
Missoula

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS<br><br>and<br><br>MONTANA ENVIRONMENTAL INFORMATION CENTER<br><br>Plaintiffs,<br><br>v.<br><br>RYAN ZINKE, *et al.*<br><br>Defendants,<br><br>and | Case No. 1:17-cv-80-SPW-TJC<br><br>**PROFESSOR MICHAEL GREENSTONE'S MOTION FOR LEAVE TO FILE AN AMICUS BRIEF** |

SPRING CREEK COAL, LLC,

              Intervenor-Defendant.

The complaint in this case asks the Court to decide whether the Office of

Surface Mining Reclamation and Enforcement (OSM) acted lawfully when it

conducted an environmental assessment (EA) of the proposed mining plan

modification for Federal Coal Lease MTM 94378 without analyzing climate

effects using the Social Cost of Carbon (SCC) and when it subsequently issued a

finding of no significant impact (FONSI) based on that EA. Professor Michael

Greenstone, one of the country's leading economists on the SCC and the former

head of the federal Interagency Working Group responsible for the SCC's

development, hereby files his *Motion for Leave to File an Amicus Brief* pursuant to

Local Rule 7.5(b) and requests leave to file an amicus brief to assist the Court in

determining whether the omission of an SCC analysis constitutes a failure to fulfill

OSM's obligations under the National Environmental Policy Act (NEPA).

## BACKGROUND

The proposed mining plan modification for Federal Coal Lease MTM 94378

(Expansion) would add 1,117.7 acres to the Spring Creek Mine (Mine) in

southeastern Montana, of which 503.7 acres would be strip-mined. *See* Spring

Creek Mine Federal Coal Lease MTM 94378 Mining Plan Modification, AR

OSM016959, at OSM016971–OSM016971 ("EA AR OSM016959"). The Mine is

Professor Michael Greenstone's Motion for Leave to File an Amicus Brief     2

owned and operated by Spring Creek Coal Company, a wholly-owned subsidiary of Cloud Peak Energy.[1] Already the seventh-largest coal mine by production in the country, the Expansion would allow Spring Creek Coal Company to recover an additional 84.8 million tons of coal. *Id.*

In October 2016, OSM issued its final EA and a FONSI, which recommended allowing the proposed Expansion. With respect to impacts of the Expansion related to climate change, the EA quantified expected greenhouse gas (GHG) emissions attributable to the Expansion but explicitly declined to monetize the cost of those emissions using the SCC. *See id.* at 4–19 ("OSMRE has elected not to specifically quantify the social cost of carbon."). Despite not quantifying GHG costs in the EA, the FONSI asserted that the Expansion's effect "on" climate change would be "moderate and short-term," and that the Expansion's effect "from" climate change would be "negligible and long-term." *See* Spring Creek Mine Federal Coal Lease MTM 94378 Mining Plan Modification (FONSI), AR OSM016953, at OSM016956.

Plaintiffs filed their *Complaint for Declaratory and Injunctive Relief* on June 8, 2017. The complaint states seven causes of action, including five under NEPA. The NEPA causes of action allege: 1) failure to evaluate indirect effects of coal

---

[1] The underlying ownership interests in the land are described in Final Statewide Oil and Gas EIS and Proposed Amendment of the Powder River and Billings Resource Management Plans, AR OSM017982, at OSM018048.

transportation; 2) failure to evaluate adequately air pollution from combustion; 3) failure to evaluate adequately greenhouse gas pollution from combustion; 4) failure to consider cumulative actions; and 5) failure to prepare an EIS. *See* Complaint for Declaratory Judgment and Injunctive Relief, ECF No. 1, at 17–24. Professor Greenstone's expertise is particularly relevant to the Court's assessment of the third, fourth, and fifth causes of action under NEPA due to his significant experience researching, writing about and implementing the best ways to account for the cumulative impacts of greenhouse gas emissions in government decision-making.

Pursuant to L.R. 7.5(b)(2)(A) and 7.1(c)(1), Professor Greenstone has sought consent to file an amicus brief from all parties to the litigation. Counsel for each plaintiff has consented. Counsel for Intervenor-Defendant takes no position on the instant motion, though states that Intervenor-Defendant reserves the right to request additional briefing pages to address any arguments raised in the amicus brief. Counsel for the Federal Defendants (OSM and DOI) state that they will oppose this Motion.

## LEGAL STANDARD

The Ninth Circuit has stated that amicus briefs provide a "valuable service" to the court by "assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped

Professor Michael Greenstone's Motion for Leave to File an Amicus Brief     4

consideration." *Miller-Wohl Co., Inc. v. Commissioner of Labor and Industry State of Montana*, 694 F.2d 203, 204–05 (9th Cir. 1982). An amicus brief is typically allowed when it meets at least one of the following criteria: (1) "the amicus has an interest in some other case that may be affected by the decision in the present case," or (2) "when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide," or (3) when the party is "not represented." *Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 430 (9th Cir. B.A.P. 2005) (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (J. Posner)); *see also Cmty. Ass'n for Restoration of the Env't (CARE) v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999) (using same reasoning to grant amicus status).

Courts allow for the introduction of extra-record material in record-review administrative cases for some of the same reasons, i.e. to help contextualize or explain complicated subject matter. While judicial review of an agency action is typically limited to the administrative record on which the agency based its decision, *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) (citing *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005)), the Ninth Circuit allows the introduction of extra-record material if it meets one of four exceptions. *See Lands Council*, 395 F.3d at 1030. Relevant to this motion,

district courts may admit extra-record evidence when (1) "supplementation is necessary to determine if the agency has considered all factors and explained its decision" or when (2) "supplementation is needed to explain technical terms or complex subjects." *Fence Creek*, 602 F.3d at 1131 (citing *Lands Council*, 395 F.3d at 1030).[2] These exceptions recognize that "when highly technical matters are involved," a court may need to look "outside the record to determine what matters the agency should have considered but did not." *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980).

## ARGUMENT

Due to Professor Greenstone's economic expertise and unique insight into the SCC, his contributions will satisfy the necessary criteria for allowing an amicus brief and will fall squarely within the exceptions for admitting extra-record material. Professor Greenstone's brief will explain that OSM misunderstood how the SCC enables informed decisionmaking with respect to the impacts of greenhouse gas emissions and, as a result, how OSM's FONSI erroneously refused to consider relevant scientific information. Accordingly, the brief will demonstrate that OSM's rejection of the SCC prevents it from taking a "hard look" as is

---

[2] If any portions of Professor Greenstone's amicus brief ultimately fail to meet these exceptions, this Court can narrowly strike those portions. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 90 F. Supp. 3d 1177, 1199–1200 (W.D. Wash. 2015) (striking improper extra-record evidence and related text from amicus briefs but declining to strike extra-record evidence that qualified under relevant factors exception).

required under NEPA and leads it to present a skewed and incomplete picture of the costs and benefits of the project.

**I.      Professor Greenstone's Motion for Leave Should Be Granted Because He Has an Interest in the Proper Use of the SCC and a Unique and Unrepresented Perspective that Will Be Helpful to the Court.**

Although amici generally need only satisfy one of three criteria used by courts in deciding whether to allow an amicus brief, Professor Greenstone satisfies all three. First, Greenstone's interest in the case arises from OSM's failure to incorporate adequately the social costs of greenhouse gases, a project in which he is deeply involved. Second, Greenstone's views will be useful to the Court because he possesses a unique perspective and offers information that the other parties in this litigation are unable to provide. Professor Greenstone is a leading expert on the incorporation of the SCC into government decision-making. Finally, because the parties lack his expertise on the SCC, Professor Greenstone's interest is unrepresented.

**i.      Professor Greenstone's Interest in this Matter Arises from His Role as Co-Creator of the SCC and Expertise on Applying Environmental Economics to Government Decisions.**

Professor Greenstone is the University of Chicago Milton Friedman Professor in Economics at the College and the Harris School of Public Policy, as well as the Director of the interdisciplinary Energy Policy Institute at the University of Chicago and the Energy & Environment Lab at the University of

Professor Michael Greenstone's Motion for Leave to File an Amicus Brief      7

Chicago Urban Labs. He previously served as the Chief Economist for President Barack Obama's Council of Economic Advisers and is a former member of the Secretary of Energy's Advisory Board. He earned his Ph.D. from Princeton University. He has examined and published extensively on the Clean Air Act; its impacts on air quality, manufacturing activity, housing prices, and human health; and its benefits and costs. He is currently leading large-scale projects, including those through the Climate Impact Lab initiative, to estimate the economic and social costs of climate change and to identify efficient approaches to mitigating these costs. *See generally* Michael Greenstone,

https://www.michaelgreenstone.com (last visited December 1, 2017); *see also* Curriculum Vitae of Michael Greenstone, attached as Exhibit 1.

When Professor Greenstone served as Chief Economist for the Council of Economic Advisers, he co-led the interagency process to develop a government-wide approach to evaluating the costs and benefits of the release of greenhouse gases into the atmosphere. This process led to what is commonly known as the social cost of carbon (SCC), a method of monetizing the impacts of greenhouse gases. The Interagency Working Group on the Social Cost of Carbon (IWG) included subject-matter experts from six federal agencies and six offices from the Executive Office of the President of the United States. In developing its estimates, the IWG used consensus-based decision-making, relied on existing academic

literature and models, and took steps to disclose limitations and incorporate new information.

As a co-creator of the SCC, Professor Greenstone is interested in educating the public and policymakers on the value of the metric and its ability to inform government decision-making. Professor Greenstone has written and spoken extensively on the importance of considering climate damages and externalities like air pollution when making decisions on federal policies, including coal leasing. *See, e.g.*, Michael Greenstone, *There's a Formula for Deciding When to Extract Fossil Fuels*, The Upshot, N.Y. Times (Dec. 1, 2015), https://www.nytimes.com/2015/12/02/upshot/theres-a-formula-for-deciding-when-to-extract-fossil-fuels.html?_r=0&mtrref=undefined; Kenneth Gillingham, James Bushnell, Meredith Fowlie, Michael Greenstone, et al., *Reforming the U.S. Coal Leasing Program*, 354 SCIENCE 1096 (2016).

Professor Greenstone has filed, and plans to continue filing, comments in administrative proceedings where the government fails to consider adequately the SCC during its decision-making process. For example, Professor Greenstone filed a comment and objection with the U.S. Forest Service regarding its review of the West Elk Coal Mine lease extension, which addressed how the SCC should be integrated into NEPA review of a particular federal coal-lease decision. Professor Greenstone also filed a comment with OSM on the Rosebud Mine expansion

Environmental Impact Statement, which also related to the proper application of the SCC in the NEPA context.

Professor Greenstone seeks to assist this Court in understanding the SCC and whether OSM properly considered these costs under NEPA.

### ii.    An Amicus Brief Is Desirable and Relevant.

To assist the Court in understanding the necessity of considering the SCC in evaluating the effects of the Expansion under NEPA, Professor Greenstone's amicus brief will make two points. First, it will explain that OSM misunderstood how the SCC enables informed decision-making with respect to the impacts of greenhouse gas emissions and, as a result, issued a FONSI that erroneously refused to consider relevant scientific information. This amicus brief would help the Court appreciate how OSM's misunderstanding of the SCC distorts its analysis and disserves the public. Accordingly, the brief will demonstrate that OSM's rejection of the SCC prevents it from taking a "hard look" as is required under NEPA and presents a skewed and incomplete picture of the costs and benefits of the project.

Professor Greenstone's expertise will be a valuable resource on the technical terms and complex subjects that the Court must understand to determine whether OSM properly considered the SCC before issuing a FONSI.

### iii. The Parties to This Litigation Cannot Adequately Address Professor Greenstone's Interest.

Professor Greenstone is not represented by any party in this case, and he possesses unique and relevant information and perspective that the lawyers for the parties are unable to provide. This otherwise unrepresented perspective is sufficient to justify granting Professor Greenstone leave to file an amicus brief. *See Safari Club Int'l v. Harris*, No. 2:14-CV-01856-GEB-AC, 2015 WL 1255491, at \*1 (E.D. Cal. Jan. 14, 2015) (granting opposed motion to appear as amicus when proposed brief contained new information not presented by either party). Plaintiffs are environmental organizations, and, while they are very knowledgeable about environmental law, they are not climate-change or air-pollution economists. Similarly, Federal Defendants and their counsel are knowledgeable about and experienced in the administration of federal lands and laws related thereto, but they too lack Professor Greenstone's technical and economic expertise. Professor Greenstone's academic work focuses on quantifying climate-change damages and integrating that information into decision-making, and his knowledge of these subjects is unparalleled. As an academic economist, Professor Greenstone is an independent, objective teacher of environmental economics. No other party in this case has or represents this level of technical expertise.

### iv.     The Timing of Professor Greenstone's Brief Will Not Disrupt the Briefing Schedule Agreed to by the Parties.

Professor Greenstone's participation in this case will not delay the existing briefing schedule and will fit within all filing deadlines set forth in the parties' briefing schedule pursuant to the Court's January 25, 2018 order. (Doc. 29.) If the Court grants this motion, Professor Greenstone will file his brief within one week of such Court order or within one week of the Plaintiff's motion for summary judgment and brief in support, whichever event happens later. In either event, Professor Greenstone's will be prepared to file at such time as to leave Defendants ample opportunity to review and address his brief as necessary in their first brief under the current schedule.

In sum, Professor Greenstone has interests that may be affected by the outcome of this litigation, offers a unique perspective on the role of the SCC in the federal coal leasing context, and is not represented by the parties. *See Ryan*, 125 F.3d at 1063 (recommending granting amicus status if party meets any one of three criteria). His perspective and explanations will be a valuable resource and will assist the Court in determining whether OSM properly considered the SCC under NEPA prior to issuing a FONSI.

## II.    Extra-Record Information Discussed in Professor Greenstone's Brief Will Qualify under Two Exceptions to the Rule Against Extra-Record Evidence.

Information in Professor Greenstone's amicus brief will qualify under the "complex subject" and "relevant factor" exceptions to the principle that judicial review of agency action is limited to the administrative record. *See Fence Creek*, 602 F.3d at 1131.

First, any extra-record information discussed in Professor Greenstone's proposed amicus brief will meet the "complex subject" exception. *See Rock Creek All. v. U.S. Fish & Wildlife Serv.*, 390 F. Supp. 2d 993, 1000 (D. Mont. 2005) (admitting extra-record document that elaborated on document used by government). The administrative record prepared by the government here contains numerous references to climate change and air pollution, including documents from the Interagency Working Group on the Social Cost of Carbon. *See, e.g.*, AR OSM018901, Interagency Working Group on Social Cost of Greenhouse Gases, Social Cost of Carbon for Regulatory Impact Analysis Under Executive Order 12866 (2010). As described in detail in Section I.i *supra*, Professor Greenstone is uniquely situated to provide background information on these technical and economically-complex subjects to assist the Court.  Courts generally distinguish between permitted material "explaining technical terms or complex subject matter" and prohibited material that attempts to "challenge underlying science and data."

Professor Michael Greenstone's Motion for Leave to File an Amicus Brief        13

*Native Ecosystems Council v. Weldon*, 232 F. Supp. 3d 1142, 1148–49 (D. Mont. 2017). Professor Greenstone's added material will fall squarely within the former, permitted category. As in *Rock Creek* where the court permitted documents that the government had already used, here OSM has considered the IWG Report on the SCC. Professor Greenstone's brief will elaborate on this document and seek to explain the design of the SCC and how the SCC uniquely enables decision-makers to weigh the costs of greenhouse gas emissions.

Second, even if the Court finds that the added material does not fit within the "complex subject" exception, Professor Greenstone's brief will help the Court determine whether OSM considered all relevant factors before making its decision. The primary purpose of the "relevant factors" exception is to allow a court to "develop a background against which it can evaluate the integrity of the agency's analysis." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). This standard is particularly permissive for NEPA review. *See Nat'l Audubon Soc'y v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 (9th Cir. 1993) (citing *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988)) ("[A]n allegation that an EIS has failed to mention a serious environmental consequence may be sufficient to permit the introduction of new evidence outside of the administrative record.").

Moreover, this case centers on OSM's misunderstanding of the SCC in its EA and subsequent decision to issue a FONSI, which is significant because the Ninth Circuit has instructed courts to employ a broad application of the relevant factors exception in cases concerning the applicability of NEPA procedures. *See Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 665 (9th Cir. 1998) (recognizing that when question is "whether an agency's activities have triggered NEPA's procedures," scope of review is "broader."). Furthermore, an EA is necessarily based off of a more circumscribed environmental record than a record that would be developed to support an EIS, a fact that only bolsters the underlying reasoning of the Ninth Circuit's case law applying liberally the relevant factor exception in cases reviewing EAs under NEPA.

Professor Greenstone's brief will show that OSM did not consider all of the relevant factors under NEPA when it refused to employ the SCC. *See Nat'l Audubon* at 1147–48 (allowing extra-record evidence under relevant factor exception when agency failed to consider serious environmental consequences and tried to sweep "stubborn problems...under the rug"). Namely, OSM failed to consider the cumulative impacts of climate change, exactly the kind of information which the SCC provides. In *Rock Creek*, for example, the court allowed extra-record evidence under the relevant factors exception because the evidence demonstrated that the agency failed to consider cumulative impacts. 390 F. Supp.

Professor Michael Greenstone's Motion for Leave to File an Amicus Brief     15

2d at 999–1001. As in *Rock Creek*, although OSM considered climate change to some degree, its analysis does not allow for an informed decision regarding cumulative impacts, an analysis for which the SCC is well-suited.

This failure led OSM to calculate and present incorrectly the costs and benefits of this project. Under NEPA, agencies must analyze costs and benefits similarly to avoid impermissibly "trumpet[ing]" the positive aspects of the project. *See Sierra Club v. Sigler*, 695 F.2d 957, 979 (5th Cir. 1983) ("The Corps cannot tip the scales of an EIS by promoting possible benefits while ignoring their costs. Simple logic, fairness, and the premises of cost-benefit analysis, let alone NEPA, demand that a cost-benefit analysis be carried out objectively. There can be no 'hard look' at costs and benefits unless all costs are disclosed."). Here OSM "trumpeted" select benefits in quantified economic form, *see* EA AR OSM016959, at OSM017013–OSM017015, but failed its legal obligation to account for the costs when it rejected using the SCC. *See, e.g.*, *Mont. Envtl. Info. Ctr. v. U.S. Office of Surface Mining*, 274 F.Supp.3d 1074 at 1095–96 (D. Mont. Aug. 14, 2017) (finding OSM violated NEPA when it monetized the project's economic benefits but not the costs of the increased carbon emissions); *High Country Conservation Advocates v. U.S. Forest Serv.*, 52. F. Supp. 3d 1174, 1190–93 (D. Colo. 2014) (finding failure to include SCC in quantitative cost-benefit analysis to be arbitrary and capricious); *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety*

*Admin.*, 538 F.3d 1172, 1200 (9th Cir. 2008) (finding agency decision to leave costs of climate change unquantified to be arbitrary and capricious given quantification of benefits). Without monetizing or otherwise quantifying the cumulative effects of greenhouse gas emissions, i.e. their costs, in an economically comprehensible way, OSM has omitted a relevant factor necessary to put quantified economic benefits into proper context and properly addressed by application of the SCC.

Professor Greenstone's brief will explain the proper use of the SCC and why the failure to employ it in this context constitutes an omission of a relevant factor. This explanation will help the Court understand fully the consequences OSM's rejection of the SCC within the NEPA context.

## CONCLUSION

Professor Greenstone respectfully requests that this Court grant his *Motion for Leave to File an Amicus Brief* in this matter. Professor Greenstone's brief will provide this Court with useful information, and his unique perspective and interests are beyond what the parties to the litigation are able to provide. Furthermore, Professor Greenstone's brief will assist the Court by explaining technical background information and by identifying relevant factors that OSM failed to consider in its EA.

DATED this 30th day of March, 2018.

Kristine M. Akland
AKLAND LAW FIRM PLLC

Mark Templeton
Robert Weinstock
Abrams Environmental Law Clinic
*Pro Hac Vice* pending

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

Pursuant to L.R. 7.1(d)(2), I certify that this motion contains 3,561  words. I

relied on my Microsoft Word word-processing tool to obtain the word count.

Respectfully submitted on March 30, 2018

Kristine M. Akland
AKLAND LAW FIRM PLLC

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2018, I caused the foregoing to be served

via United States Postal Service Mail on counsel for all parties at the following

addresses:

Samantha M. Ruscavage-Barz
WILDEARTH GUARDIANS - SANTA FE
516 Alto Street
Santa, Fe 87501

Shannon Laun
WESTERN ENVIRONMENTAL LAW CENTER
1402 Third Avenue
Suite 1022
Seattle, WA 98101

Shiloh Silvan Hernandez
WESTERN ENVIRONMENTAL LAW CENTER - HELENA
103 Reeder's Alley
Helena, MT 59601

Laura King
WESTERN ENVIRONMENTAL LAW CENTER - HELENA
103 Reeder's Alley
Helena, MT 59601

John S. Most
U.S. Department of Justice-DC-7611
P.O. Box 7611
Environment & Natural Resources Division
Washington, DC 20044-7611

Andrew C. Emrich
HOLLAND & HART - GREENWOOD VILLAGE
6380 S. Fiddlers Green Circle
Suite 500
Greenwood Village, CO 80111

William W. Mercer
HOLLAND & HART-BILLINGS
401 North 31st Street
Suite 1500
Billings, MT 59101-1277

Kristine M. Akland
AKLAND LAW FIRM PLLC