Shiloh S. Hernandez
Laura H. King
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org
king@westernlaw.org

Shannon I. Laun (WA Bar #52436)
Western Environmental Law Center
1402 Third Ave. Suite 1022
Seattle, Washington 98101
(206) 487-7225
laun@westernlaw.org
*Admitted pro hac vice*

*Counsel for Plaintiffs*

Samantha Ruscavage-Barz (NM Bar #23276)
WildEarth Guardians
516 Alto St.
Santa Fe, NM 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org
*Admitted pro hac vice*

*Counsel for Plaintiff WildEarth Guardians*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS and MONTANA ENVIRONMENTAL INFORMATION CENTER,<br>            Plaintiffs,<br>      vs.<br>RYAN ZINKE, et al. | Case No. CV 17-80-BLG-SPW-TJC<br>**STANDING DECLARATION OF JEREMY NICHOLS** |

1

Defendants,

and

SPRING CREEK COAL, LLC,

Intervenor-Defendant.

---

**DECLARATION OF JEREMY NICHOLS**

---

I, Jeremy Nichols, declare as follows:

1.     The facts set forth in this declaration are based on my personal knowledge.  If called as a witness in these proceedings, I could and would testify competently to these facts.

2.     I reside in Golden, Colorado.

3.     I am an employee and member of WildEarth Guardians, a 501(c)(3) nonprofit corporation that advocates for environmental protection in the American West, and have been for more than six years.  The mission of WildEarth Guardians is to protect and restore the wildlife, wild places, wild rivers, and health of the American West.  To fulfill this mission, WildEarth Guardians has a Climate and Energy Program.  The aim of the Climate and Energy Program is to help advance a transition to cleaner energy sources and to reduce or prevent the environmental impacts of fossil fuel production and consumption.  I am the Director of WildEarth Guardians' Climate and Energy Program and have been since August 2008.  I personally support WildEarth Guardians and work for the organization because I support and believe strongly in the organization's mission.

4.     In furtherance of its mission, WildEarth Guardians actively watchdogs coal mining in the American West to ensure that the environmental impacts are appropriately regulated and kept in check.  Coal mines can be significant sources of air and water pollution, disrupt wildlife habitat, and degrade and destroy public lands.  They can also be large direct and indirect sources

2

of greenhouse gas emissions, including methane and carbon dioxide, which contribute to global climate change.  WildEarth Guardians has been actively engaged in coal mining issues in Colorado, Montana, New Mexico, Utah, and Wyoming for more than 10 years.

5.      I am familiar with the U.S. Office of Surface Mining Reclamation and Enforcement's ("OSMRE's") and the Interior Secretary's most recent decision to approve a mining plan modification for the Spring Creek coal mine in southeastern Montana.  While located in Montana approximately 115 miles southeast of Billings, the mine is very close to the border with Wyoming and in fact is only about 25-30 miles away from the town of Sheridan, Wyoming.  The Spring Creek mine, a large open pit strip mine, is the largest coal mine in Montana and fuels many coal-fired power plants in the U.S.  According to the U.S. Energy Information Administration, the mine was the 12th largest in the U.S. in 2016 (*see* http://www.eia.gov/coal/annual/pdf/table9.pdf (last viewed March 19, 2018)).  Also according to Energy Information Administration Form EIA-923 reports available online (*see* http://www.eia.gov/electricity/data/eia923/ (last viewed March 19, 2018)), the mine has recently fueled power plants in Minnesota, Michigan, Washington, Arizona, and Alabama.  The mine is part of the Powder River Basin coal producing region, which encompasses much of northeastern Wyoming and southeastern Montana and is the largest coal producing region in the nation.  Some of the coal mined at Spring Creek is shipped overseas through ports in the Pacific Northwest.

6.      The most recent mining plan modification decision was signed by the Assistant Secretary of the Interior for Land and Minerals Management on October 3, 2016.  This decision authorized mining of federal coal that was purportedly leased by the U.S. Bureau of Land Management ("BLM") to Cloud Peak Energy as part of federal coal lease MTM-94378.  I

submitted comments to OSMRE on behalf of WildEarth Guardians on this mining plan modification. I am very familiar with the decision and the underlying analyses that supposedly justified the October 3, 2016 approval by the Assistant Secretary of the Interior.

7.      WildEarth Guardians' organizational interest in addressing the impacts of coal mining throughout the American West, including in the Powder River Basin, is well established. Guardians has been an active advocate around coal mining issues in Colorado, Montana, New Mexico, Utah, and Wyoming since 2007. We primarily focus on federal oversight of coal mining and actively comment on federal coal leasing proposals, have engaged in the federal administrative appeals process, and pursued litigation where necessary to address outstanding concerns over compliance with federal environmental laws. Our interest in the Powder River Basin has been and continues to be to ensure the life-cycle environmental impacts of coal mining, including mining, transportation, and coal combustion, are effectively managed by federal land and mineral managers. We are concerned both about the global climate implications of more coal mining and burning, as well as the localized health and environmental impacts of coal mining.

8.      We previously filed suit in this court over a 2012 Mining Plan Modification for the Spring Creek coal mine. That suit related to the failure of OSMRE to properly notify the public around the Mining Plan Modification and associated environmental analysis, as well as OSMRE's failure to properly disclose the environmental impacts of coal mining at Spring Creek, including life-cycle impacts. In 2015, this court agreed and held that OSMRE violated the National Environmental Policy Act ("NEPA"). We have continued to actively scrutinize mining at Spring Creek and to play a meaningful role in informing OSMRE in the hopes that better decisions will be made.

9.      Guardians' interest in the Powder River Basin reflects my personal interest in the region.  I regularly (on average once/year) visit the public lands next to and near the Spring Creek coal mine and have done so for several years for recreational enjoyment.  I regularly visit the area while visiting good friends in Sheridan, Wyoming and often when traveling to and from Billings and other parts of Montana and northern Idaho to visit friends and family.  The Spring Creek mine is located in the rolling hills of southeastern Montana.  To the west and visible from the mine are the Bighorn Mountains.  Directly east is the Tongue River and the Tongue River Reservoir and Tongue River Reservoir State Park.  To the north are the headwaters of Rosebud Creek.  The mine is also located east of the Crow Reservation and south of the Northern Cheyenne Reservation.  I enjoy hiking and viewing wildlife on public lands next to and near the mine area, including on lands managed by the BLM and by the State of Montana.  There are chunks of BLM managed lands along Montana Highway 314, which lies to the east of the mine and routes north-south, right next to the Spring Creek mine.  The Tongue River Reservoir State Park, located directly east of the Spring Creek mine, also consists of numerous chunks of public lands.

10.      I enjoy visiting these lands as I greatly enjoy visiting this part of the Great Plains where hills dominate the landscape and there is abundant wildlife.  The proximity of these lands to Sheridan also makes them easy to access and to recreate upon.  It's a majestic, largely undeveloped landscape, with amazing views of the Bighorn Mountains, beautiful outcrops of sandstone and other sedimentary formations, pine breaks, sagebrush, and meandering streams.  Every time I visit this area, particularly the Tongue River Reservoir State Park, I see eagles, including bald eagles in the fall and winter, as well as other raptors, deer, and elk.  Below is a picture of a bald eagle that I took during a visit in November of 2013, as well as other pictures of

the landscape taken in 2013 and in subsequent years.  The area is also rich with history and is filled with reminders of the region's sometimes sordid past.  The Rosebud Battlefield, which is designated a Montana State Park, is located north of the Spring Creek mine.  The Crow and Northern Cheyenne Indian Reservations are nearby and attest to both the past and present significance of the region to Native Americans.



**Above, bald eagle near Spring Creek mine.  Below, landscape near Spring Creek mine. Pictures taken in November 2013.**





**Above, hills to the east of the Spring Creek mine.  Picture taken in November 2013.  Below, Tongue River Reservoir and Tongue River State Park.  Picture taken in February 2015.**





**Above, deer near Spring Creek mine.  Photo taken September 2017.  Below, Tongue River Reservoir.  Photo taken November 2013.**



11.     My most recent visit was in September of 2017, during which I hiked on public lands next to the Tongue River Reservoir and adjacent to the Spring Creek mine.  I hiked on these lands while visiting friends in Sheridan and touring the region with co-workers.  I hiked to enjoy the outdoors and view wildlife.  Previously, I visited these lands in February 2015, November 2013, May 21, 2013, June 25, 2012, June 28, 2011, March 15, 2010, in the fall of 2009, and in the spring of 2008.  I intend to continue to visit the area every year for the foreseeable future.  I intend to visit again in June of this year when I drive up to Sheridan and to Billings to visit friends and colleagues.

12.     In my visits to the area, I've observed the Spring Creek mining operations.  These operations are impossible not to notice.  The operations include extensive land disturbance, heavy machinery (including drag lines, trucks, and trains), conveyor systems, large buildings, and related traffic.  I know I'm observing the Spring Creek mine because it is labeled on maps by OSMRE and I've seen the signs in the area, including the sign for the Spring Creek mine turnoff at County Road 305.  I've observed the mine and its connected operations every time I've visited

this area.  The mine has an immense presence on the landscape.  Below are some pictures of the

Spring Creek mining operations I've taken over the years.



**Entrance to Spring Creek mine.**



**Above, dragline and mining pit with hills in the background. Below, mine facilities.**





**Coal train loading at Spring Creek mine.**

13.     I enjoy visiting public lands in this area, but the sights and sounds of the Spring Creek

coal mine prevent me from fully enjoying public lands in the area.  The mining operations—

including train traffic, dragline and other heavy machinery operation, blasting, digging, and

hauling—are loud, create air pollution, and significantly impact the landscape with industrial

activity.  The air pollution impacts are especially noticeable.  There is often a gray to brown haze

hanging over the mine in the area that appears linked to the extensive soil disturbance, blasting,

and heavy machinery operations in the area.  These activities and impacts detract from the scenic

beauty of the area, are offensive to observe, and make me concerned over my health and well

being while hiking.  Observing and experiencing all of this industrial activity detracts from my

ability to fully enjoy the undeveloped public lands of the area and to view wildlife.  The sights

and sounds detract from my enjoyment of the scenery, my enjoyment of wildlife viewing, my

enjoyment of being outdoors on public lands.

14.     The harms that I experience related to mining at Spring Creek are irreparable.  They

lead to the release of air emissions that cannot be put back.  Public lands in the area are disturbed

for years during and after mining activities.  The undeveloped character of this area never returns

to its previous state.

15.     The irreparable harms to my enjoyment of public lands next to and near the Spring

Creek mine are made worse by the failure of OSMRE and the Assistant Interior Secretary's

failure to fully comply with federal laws and regulations when approving the 2016 Mining Plan

Modification.

16.     I am aware that in approving the 2016 Mining Plan Modification, OSMRE and the

Assistant Interior Secretary overlooked a number of potentially significant environmental

impacts, in violation of NEPA.  While OSMRE prepared an Environmental Assessment and

determined that there would be no significant environmental impacts, the agency failed to

address impacts related to transporting coal from the Spring Creek mine to coal-fired power plants and to coal export facilities, failed to analyze and assess impacts related to the burning of coal mined at Spring Creek, including air pollution and greenhouse gas emission impacts, and failed to consider the impacts of cumulative actions occurring at or near the Spring Creek mine. Fundamentally, it appears that OSMRE violated NEPA in failing to prepare an environmental impact statement. If the agency would have prepared an environmental impact statement, it would have led to a more rigorous environmental analysis, a more reasoned and objective decision, and provided more opportunities for public scrutiny of mining at Spring Creek.

17.     Furthermore, an objective consideration of environmental impacts could have led OSMRE and the Interior Secretary to adopt a No Action Alternative, in which case expanded mining would have been denied, thereby lessening the life of the mine.

18.     In approving the 2016 Mining Plan Modification, OSMRE and the Assistant Interior Secretary also completely ignored the fact that federal coal lease MTM-94378 was not legally approved by the BLM. The lease was approved by a BLM Field Manager who lacked delegated authority to make such decisions. According to Interior Department precedent, this means the lease was not validly approved and had no legal effect. It appears there was no leased federal coal that could be mined as part of the 2016 Mining Plan Modification.

19.     My enjoyment of public lands next to and near the Spring Creek mine would be greatly enhanced if OSMRE and the Interior Secretary fully complied with NEPA and/or were prohibited from approving the 2016 Mining Plan Modification on the basis that MTM-94378 was not a legally valid federal coal lease. In fact, if the 2016 Mining Plan Modification is upheld, the harms I would experience would be irreparable.

20.     With regards to NEPA compliance, if OSMRE were required to fully comply with

13

NEPA, it is very likely the environmental impacts detracting from my enjoyment of the area—air pollution, noise, industrial activity, and land destruction—would be reduced or outright eliminated. If OSMRE fully complied with NEPA, the agency could very well have adopted a No Action alternative, which would lessen the life of the mine and reduce the impacts associated with mining. This would allow me to fully enjoy the public lands of the area. I enjoy this area now, but if these industrial impacts were reduced or eliminated, my enjoyment would increase substantially and I am certain I would visit more frequently to use and enjoy public lands in the area. At the least, my enjoyment of future intended visits would be greatly increased. If mining is allowed to proceed, the harms I would experience would be irreparable. Once land is mined, it cannot be restored for many, many years. Furthermore, once air pollution is released, including greenhouse gas pollution, it cannot be put back. Overall, the character or aesthetics of the area would be drastically altered to the point that it would never appear the same. Finally, if coal is mined and shipped away to be burned, it cannot be put back into place. The offensive air pollution and other impacts associated with coal transport and coal combustion could never be retracted. This would be an irreparable harm I would experience if the 2016 Mining Plan Modification is upheld. No money would ever compensate me for the damages caused by these harms.

21.     With regards to the validity of federal coal lease MTM-94378, if this lease is actually not legally valid, then the Assistant Interior Secretary was not authorized to approve the 2016 Mining Plan Modification. A favorable ruling on this issue would therefore ameliorate the harms to my recreational enjoyment of public lands near the Spring Creek mine. If the industrial impacts of mining associated with the 2016 Mining Plan Modification were eliminated by virtue of the underlying lease being illegally approved, my enjoyment of public lands and other values

14

in the area would increase substantially and I am certain I would visit more frequently to use and

enjoy public lands in the area.  At the least, my enjoyment of future intended visits would be

greatly increased.  If illegal mining is allowed to continue, it would irreparably harm my

enjoyment of public lands near the Spring Creek mine by leading to more air pollution, including

greenhouse gas emissions, and land disturbance that cannot be repaired anytime in the near

future.

22.     As a member of WildEarth Guardians, the harms I have experienced and will

continue to experience if OSMRE and the Assistant Interior Secretary are not brought into

compliance with NEPA and/or not prohibited from approving the 2016 Mining Plan

Modification on the basis that federal coal lease MTM-94378 is not legally valid will also

adversely affect Guardians and its interests in confronting the adverse environmental impacts of

coal mining and in advancing cleaner energy in the American West.  If OSMRE and the

Assistant Interior Secretary comply with NEPA and other applicable legal requirements,

Guardians' interest in protecting and restoring the wildlife, wild places, wild rivers, and health of

the American West will be protected.  The harms that WildEarth Guardians and I have

experienced and will continue to experience would be redressed if OSMRE and the Interior

Secretary are compelled to comply with NEPA and all other applicable laws and regulations.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States that the foregoing is true and correct.

Executed this 4th day of April 2018

Jeremy Nichols